**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| SOUTH RIVER WATERSHED ALLIANCE, INC. | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Civil Action File No. 1:23-CV-03416-JPB |
| CITY OF ATLANTA, and ATLANTA POLICE FOUNDATION, INC. | ) ) ) ) | |
| Defendants. | ) ) | |

**JOINT MOTION TO DISMISS PLAINTIFF'S CLEAN WATER ACT
CITIZEN SUIT AND BRIEF IN SUPPORT**

Defendants City of Atlanta ("City") and the Atlanta Police Foundation, Inc. ("Foundation") respectfully move the Court to dismiss Plaintiff South River Watershed Alliance, Inc.'s ("SRWA") Amended Complaint for Injunctive Relief [Dkt. 29] under Fed. R. Civ. P. 12(b)(1), 12(b)(4), and 12(b)(6):

**INTRODUCTION**

SRWA's discontent with the Atlanta Public Safety Training Center project ("Training Center" or "project") is chronicled in Defendants' Brief in Opposition to Plaintiff's Motion for Preliminary Injunction. [Dkt. 19]. In its attempts to delay the Training Center, SRWA has pursued different cases in several different venues, but the arguments have remained essentially the same. SRWA now improperly pursues

those arguments as a Clean Water Act ("CWA") citizen suit for injunctive relief.

SRWA acknowledges that the project's development and construction activities are authorized under the Georgia Environmental Protection Division's ("EPD's") 2018 National Pollutant Discharge Elimination System ("NPDES") Construction Stormwater General Permit GAR 100001 ("Permit"). In the Complaint [Dkt. 1], SRWA included allegations related to a handful of Permit requirements. After the Defendants' filed a Motion to Dismiss [Dkt. 22], SRWA filed an Amended Complaint [Dkt. 29], hoping to avoid dismissal. In the Amended Complaint, SRWA abandons several of its arguments and focuses solely on whether permitted stormwater discharges from the project contain turbidity exceeding Georgia's in-stream water quality standards. This narrowed claim also fails, as have all of SRWA's prior efforts.

First, this argument is a transparent and ***untimely*** attack on the validity of the 2018 Permit itself. Indeed, in July 2023, SRWA timely challenged EPD's 2023 reissuance of the Permit[1] and raised nearly identical arguments to those it makes here. *See generally, SRWA v. Cown,* 2404045-OSAH-BNR-WQC-44-Howells (July 20, 2023) ("state administrative proceeding"). Defendants are not named in that

---

[1] NPDES permits are valid for five years and must be reissued, in part to allow for public input on, and an opportunity to challenge, the sufficiency of the permit. O.C.G.A. § 12-5-30(d).

action, but EPD—the author of the Permit—is.  SRWA's arguments about the sufficiency of the Permit here are an impermissible collateral attack on prior agency decisions and are improper.  Additionally, those arguments—however flawed they may be—are being resolved[2] in the pending state administrative proceeding.

Second, seeking to avoid regulatory bars, SRWA erroneously uses a broad provision in the Permit (Part I.C.4.) to essentially claim that water quality standards are enforceable independent of the Permit's more specific provisions.  In doing so, SRWA mischaracterizes the Permit and applicable water quality standards and fails to assert any allegations that Defendants are in violation of the Permit's more substantive and specific provisions.

In addition, SRWA's claims must be dismissed because SRWA fails to properly allege ongoing violations and failed to provide the requisite pre-suit notice under 33 U.S.C. § 1365(b).  For these reasons, the Court lacks subject matter jurisdiction to consider this case, or alternatively, should dismiss it for failure to state a claim upon which relief may be granted, or abstain from considering allegations that should be properly resolved by a state administrative agency.

---

[2] *See e.g.* EPD's Motion to Dismiss or In the Alternative Motion for Summary Determination in the state administrative proceeding, attached as **Exhibit 1**.  This Court should take judicial notice of EPD's Motion pursuant to Fed. R. Evid. 201(c) because it is a public record "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *Stephens v. State Farm Fire & Cas. Co*., No. CIVA 1:03-CV-3094 JT, 2004 WL 5546250, at *2 (N.D. Ga. June 23, 2004), aff'd, 149 F. App'x 908 (11th Cir. 2005).

## STATUTORY AND REGULATORY FRAMEWORK

### A. State Water Quality Planning and NPDES Permitting

The CWA allows "individual states to enact and administer their own water quality programs, subject to certain federal minimum standards." 33 U.S.C. §§ 1251, 1313; O.C.G.A §§ 12-5-23(c)(15); 12-5-30. Pursuant to that statutory delegation, EPD establishes water quality standards, which are numeric or descriptive narrative standards of acceptable "in-stream" conditions that protect a waterbody's designated use (*e.g.*, fishing). Where a waterbody is not meeting its designated use, EPD determines the total maximum daily pollutant loads ("TMDLs") that will facilitate restoration of water quality. TMDLs must be reviewed and approved by the U.S. Environmental Protection Agency ("EPA"). *See* 33 U.S.C. § 1313(d); 40 C.F.R. § 130.7; *see also Am. Farm Bureau Fed'n v. U.S. E.P.A.,* 792 F.3d 281, 289 (3d Cir. 2015).

The CWA prohibits the discharge of a pollutant into waters of the United States from a point source except in compliance with an NPDES permit. *See* 33 U.S.C. § 1311. EPD drafts and issues NPDES permits in Georgia and converts water quality standards into actionable permit conditions appropriate for the specific permitted activity. *See Am. Paper Inst. v. U.S. EPA*, 996 F.2d. 346, 350 (D.C. Cir. 1993); *Black Warrior Riverkeeper, Inc. v. Black Warrior Mins., Inc*., 734 F.3d 1297, 1301 (11th Cir. 2013). And, where applicable, a TMDL may be used to develop the

actionable permit limits. *See* O.C.G.A. §§ 12-5-23(c)(13), (15); 12-5-30; Ga. Comp. R. & Regs. 391-3-6-.16(3)(c)(5)(i)(l)(V). But water quality standards and TMDLs are not self-executing or independently enforceable, and they do not inherently create or establish permit limits. *See Am. Farm Bureau Fed'n*, 792 F.3d at 291; *Rio Hondo Land & Cattle Co., L.P. v. U.S. EPA*, 995 F.3d 1124, 1129 (10th Cir 2021); *Am. Paper Inst.*, 996 F.2d. at 350. Instead, EPD uses these tools to draft and issue NPDES permits with enforceable limits.

## B. The NPDES Permit

In 2018, after a lengthy rulemaking process, EPD issued the statewide Permit, which authorizes stormwater discharges from construction activities greater than one acre. *See* Am. Compl. ¶ 54. The Permit is a comprehensive, 46-page document imposing myriad requirements developed specifically to address water quality impacts from construction activity. The Permit was subject to public notice and comment and could have been appealed in 2018. *See* O.C.G.A. § 12-2-2(c)(2).

Among other things, the Permit requires all construction activities to comply with a site-specific Erosion, Sedimentation, and Pollution Control Plan ("ESPCP"). *See* Am. Compl. ¶ 31; Permit at Part IV. The ESPCP must be developed by a certified "Design Professional" and must include best management practices "to prevent and minimize erosion and resultant sedimentation" and protect water quality ("BMPs"). Permit at Part IV; *see also* O.C.G.A. § 12-7-19. The Permit includes

daily rainfall monitoring requirements, Permit at Part IV.D.4.a(2), inspection requirements, *id.* at Part IV.D.4 (requiring daily inspections, weekly comprehensive inspections to ensure BMPs are in place and operating as designed, and post-rainfall inspections), and reporting and record keeping requirements, *id.* at Part IV.D.4.a.(6).

Where a project may discharge into a waterbody with a TMDL, the ESPCP must include at least four additional BMPs from a specific list. *Id.* at Part III.C. (requiring at least four additional BMPs "to ensure that the permittee's discharge(s) do not cause or contribute to a violation of State water quality standards ...."). And, where a TMDL Implementation Plan for sediment has been finalized, the ESPCP must address any site-specific conditions in the Implementation Plan. *Id.* at Part III.C.1. The Permit also requires sampling for turbidity with site-specific collection, handling, and analysis methods for quality control. *Id*. at Part IV.D.6. Sampling is required after certain "qualifying events" at prescribed frequencies. *Id*. at Part IV.D.6.d. Sampling results are compared against established benchmarks to confirm that the BMPs are working and not allowing an unacceptable increase in turbidity.

Importantly, Georgia regulations and the Permit provide that the proper design, installation, and maintenance of BMPs is a complete defense to allegations of turbidity exceedances (commonly, the "BMP Defense"). *Id*. at Part III.D.1; *see also,* Carol A. Couch, EPD Director, Memorandum: *BMP Defense for Storm Water Discharges from Construction Activity* (Aug. 12, 2009) [Dkt. 21-1 at pp. 52-53].

### C. CWA Citizen Suits

The CWA authorizes citizens to bring suits to enforce alleged violations of an effluent limit or an NPDES permit condition. 33 U.S.C. § 1365. Citizen suits are a secondary enforcement mechanism, and as such, they have a "limited role" in the overall CWA regime, *Black Warrior Riverkeeper, Inc.,* 734 F.3d at 1298, and are only appropriate to "abate an ongoing violation." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 59-60 (1987) (Congress intended for citizen suits "to supplement rather than to supplant government action.").

A citizen plaintiff must provide a detailed notice to the allegedly offending party at least 60 days prior to filing suit. The notice must include enough detail to allow the recipient "to identify the specific standard, limitation, or order" allegedly violated, "the activity alleged to constitute a violation," the persons responsible, and the location and date of the alleged violation. 40 C.F.R. § 135.3(a). Alleged violators must be allowed the opportunity to comply with the law and minimize the burden on agencies and on courts. *See S. Side Quarry, LLC v. Louisville & Jefferson Cnty. Metro. Sewer Dist.,* 28 F.4th 684, 693 (6th Cir. 2022).

## FACTUAL BACKGROUND

### A. The Training Center Project

Pursuant to a lease with the City, the Foundation is actively developing the Training Center on approximately 85 acres of City-owned property in DeKalb

County.  Am. Compl. ¶¶ 20, 26-27, 60.  The Training Center will replace outdated facilities used by the City to train police and fire rescue officers and will help recruit new officers to serve the community.  *See* **Exhibit 2.**[3]  Over 200 acres of the site (apart from the training center) will be preserved as public green space.  *Id*.  Unlike typical construction projects, the on-site project team faces daily dangerous conditions posed by trespassers, including the intentional destruction of BMPs.  *Id*. at 5.

On October 12, 2022, Defendants submitted the required notice for coverage under the Permit and obtained authorization to discharge stormwater from construction activity at the Training Center.  *See* Am. Compl. ¶ 60.  Prior to obtaining coverage, Defendants submitted the ESPCP for review by EPD and DeKalb County. SRWA does not dispute that the project is authorized to discharge stormwater under the Permit and has an approved ESPCP.  *Id*. at ¶¶ 28, 60.

**B. SRWA's Pre-Suit Notice and Defendants' Response**

On May 19, 2023, SRWA sent a notice letter ("Notice Letter") to Defendants,

---

[3]  Defendants' July 17, 2023, Response Letter to SRWA's Notice of Intent to Sue under the CWA is attached hereto as **Exhibit 2**. The Court can consider Defendants' response to SRWA's notice letter without converting this Motion to Dismiss into a motion for summary judgment because it is central to SRWA's claims of alleged unlawful discharges, because its authenticity should not be in dispute, and because it is a public document subject to Georgia's Open Records Act (O.C.G.A. §§ 50-18-70, *et seq*.); *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002).

asserting violations of the Permit. *See* Notice Letter, [Dkt. 1-1]. The Notice Letter was deeply flawed. Nonetheless, Defendants fully investigated and responded to the allegations on July 17, 2023 ("Response Letter"). *See* **Exhibit 2**. As relevant here, SRWA alleged that discharges from the site were violating a water quality standard. *See* Notice Letter at 11. Defendants explained that, notwithstanding several photographs of Intrenchment Creek, the Notice Letter made no effort to show a causal link between discharges from the project and the turbid water. *See* Response Letter at 7-8. Further, this allegation travels upon an incomplete and inaccurate summary of the Permit and Georgia's water quality standards for turbidity. *See* Notice Letter, *generally*.[4]

## STANDARD OF REVIEW

Motions to dismiss pursuant to Rule 12(b)(1) are facial or factual attacks on jurisdiction. *Morrison v. Amway Corp.,* 323 F.3d 920, 924 n. 5 (11th Cir. 2003). A factual challenge disputes the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and the Court may consider matters outside the complaint, including testimony or affidavits, and weigh conflicting evidence to

---

[4] SRWA also alleged that clearing and grading occurred prematurely in violation of Permit Part III.D.2. *See* Notice Letter at 4. After the Defendants filed their Motion to Dismiss [Dkt. 22] again explaining why SRWA's allegations are improper and inaccurate, SRWA filed an Amended Complaint [Dkt. 29] completely dropping this allegation from its claim. Accordingly, Defendants do not further address this incorrect allegation in the argument section of this brief.

determine if jurisdiction is supported by the facts. *Id.* "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). With regard to Rule 12(b)(4), the Eleventh Circuit has not said who bears the burden of proof, but under the closely-related 12(b)(5), "the party on whose behalf service is made has the burden of establishing its validity." *Boring v. Pattillo Indus. Real Estate*, 426 F. Supp. 3d 1341, 1345 (N.D. Ga. 2019) (cit. om.).

## ARGUMENT AND CITATION OF AUTHORITY

### A. This Court Lacks Subject-Matter Jurisdiction Because There Are No Ongoing Violations of the CWA.

There is no "ongoing violation" of the Permit that would give this Court subject-matter jurisdiction under the CWA's citizen suit provision. To establish a CWA violation, a citizen-plaintiff must prove that (1) there has been a discharge; (2) of a pollutant; (3) into waters of the United States; (4) from a point source; (5) ***without or in violation of an NPDES permit*** (emphasis added). *See Parker v. Scrap*

*Metal Processors, Inc.*, 386 F.3d 993, 1008 (11th Cir. 2004). Further, the citizen-plaintiff must allege an ongoing violation, or "a reasonable likelihood that a past polluter will continue to pollute in the future." *Atl. States Legal Found., Inc. v. Tyson Foods, Inc.,* 897 F.2d 1128, 1133 (11th Cir. 1990) (*citing Gwaltney,* 484 U.S. at 57). A plaintiff may establish an ongoing violation by: (1) proving violations that continue on or after the date the complaint is filed, or (2) presenting sufficient evidence for a reasonable trier of fact to find that intermittent or sporadic recurring violations are likely. *See Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 953 F. Supp. 1541, 1555 (N.D. Ga. 1996). Intermittent or sporadic violations are not considered "ongoing" when there is no real likelihood of repetition. *See City of Mt. Park, LLC v. Lakeside at Ansley, LLC,* 560 F. Supp. 2d 1288, 1292 (N.D. Ga. 2008) (citing *Chesapeake Bay Found. v. Gwaltney of Smithfield,* 844 F.2d 170 (4th Cir. 1988)).

Significantly, water quality standards and TMDLs are not self-executing and have no regulatory force on their own. *See Rio Hondo Land & Cattle Co.*, 995 F.3d at 1129; *In re ACF Basin Water Litig.*, 467 F. Supp. 3d 1323, 1337 (N.D. Ga. 2020) ("Georgia's water quality standards are not self-enforcing, rather they provide the basis for specific, enforceable requirements designed to achieve them."). Instead, state-created standards are used as a basis for specific effluent limitations in NPDES permits which are then enforced as specific permit requirements. *Am. Paper Inst.*,

996 F.2d. at 350.[5]  This legal construct strikes at the heart of SRWA's claim where SRWA disagrees with the lawfully created TMDL and Permit standards.  Because SRWA's alleged violation is not supported by law, this Court does not have subject-matter jurisdiction on a factual, not facial basis, and therefore, SRWA's claims must be dismissed.  *See Coward v. Forestar Realty*, 2016 U.S. Dist. LEXIS 184855, *2 (D.C. N.D. Ga. 4:15-CV-0245-HLM, Apr. 7, 2016) (distinguishing facial and factual attacks on subject matter jurisdiction).

## 1. Compliance with the Permit's Best Management Practices Adequately Protects Water Quality.

SRWA alleges that Defendants have violated the Permit[6] by allegedly violating Georgia's water quality standards.  Am. Compl. ¶ 113.  This claim is based on an incorrect and incomplete reading of the Permit and should be dismissed.

When analyzing a permit, more specific standards trump general standards. *See Jones Creek Invs., LLC v. Columbia Cnty., Ga.,* 98 F. Supp. 3d 1279, 1299 (S.D.

---

[5] Although Judge Thrash held in *New Manchester Resort & Golf, LLC v. Douglasville Dev., LLC*, 734 F. Supp. 2d 1326, 1338, (N.D. Ga. 2010), that narrative water quality standards incorporated into a permit might be enforceable, the court did not hold that narrative water quality standards could be independently enforced. Further, in *New Manchester*, in interpreting the permit the court looked to the more specific water quality standard for turbidity related to land-disturbing activities. *Id.*

[6] "[T]he Supreme Court has explained that a citizen suit against a permit holder 'will necessarily' be for violations of a permit."  *Black Warrior Riverkeeper, Inc.*, 734 F.3d at 1299(*quoting EPA v. Cal. ex rel. State Water Res. Control Bd.,* 426 U.S. 200, 223 (1976).)

Ga. 2015) ("[t]o interpret the NPDES permit, the Court must adhere to the standard principles of contract law."); *see also Altamaha Riverkeeper, Inc. v. Rayonier, Inc*., No. CV 214-44, 2015 WL 1505971, at *3 (S.D. Ga. Mar. 31, 2015) ("[w]hile NPDES permits themselves are not contracts, they are interpreted as if they were"); *Nat. Res. Def. Council, Inc. v. Cnty. of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013); *Kirby v. Anthem, Inc*., No. 1:19-CV-00597-ELR, 2019 WL 2004128, at *6 (N.D. Ga. Mar. 21, 2019) ("[i]n construing contracts, a specific provision will prevail over a general one.").

Specific clauses should prevail over general clauses, even in absence of a conflict between the two provisions. *See Itel Container Corp. v. M/V Titan Scan*, 139 F.3d 1450, 1455 (11th Cir. 1998) (noting that "under generally accepted principles of contract construction, specific clauses take precedence over general ones…" without adding any limitation requiring conflicting terms); *see also Cnty. of Suffolk v. Alcorn*, 266 F.3d 131, 139 (2d Cir. 2001) ("Even where there is no 'true conflict' between two provisions, specific words will limit the meaning of general words if it appears from the whole agreement that the…purpose was directed solely toward the matter to which the specific words or clause relate."); *Schwartz v. Harris Waste Mgmt. Grp., Inc*., 237 Ga. App. 656, 660, 516 S.E.2d 371, 375 (1999) ("under general rules of contract construction, a limited or specific provision will prevail over one that is more broadly inclusive.").

SRWA relies solely on a generic reference to water quality standards in the Permit's eligibility terms, Part I.C.4, without crediting more specific provisions designed to protect water quality, including provisions that specifically address turbidity and discharges to impaired water bodies, like Intrenchment Creek. Tellingly, Part III.C.2 provides, "[i]n order to ensure that the permittee's discharge(s) do not cause or contribute to a violation of State water quality standards, the [ESPCP] must include at least four" additional BMPs from a specific list of BMPs. These more specific provisions are where "the rubber hits the road," *see Am. Paper Inst.,* 996 F.2d. at 350, and reflect EPD's translation of water quality standards into concrete and enforceable permit terms tailored to the permitted activity. SRWA does not allege that four additional BMPs from the list were not included in the ESPCP or that Defendants are not complying with those BMPs. Indeed, SRWA does not allege that Defendants have failed to comply with any of the substantive Permit requirements, or failed to implement the ESPCP, or failed to properly design, install, and maintain BMPs.

Importantly, EPD has determined that compliance with the Permit and required BMPs protects water quality standards, even for impaired waters. For example, in 2007 and 2017, EPD finalized, and EPA approved, two TMDLs for Intrenchment Creek. Both TMDLs make clear that the Permit's conditions "were established to assure that the storm water runoff from these sites does not cause or

contribute sediment to the stream" and "[e]ach … Permit … can be considered a water quality-based permit in that the numeric limits in the permit, if met, will not cause a water quality problem." (*See* 2007 *Total Maximum Daily Load Evaluation for Seventy Stream Segments in the Ocmulgee River Basin for Sediment* ("2007 TMDL") and *2017 TMDL Evaluation for Eleven Stream Segments in the Ocmulgee River Bain for Sediment* ("2017 TMDL"), Section 5.1). Accordingly, EPD has determined that Permit compliance will necessarily protect water quality standards, and there is no dispute that Defendants have a permit and no allegations that Defendants are in violation of the Permit's more specific provisions.

### 2. SRWA Fails to Sufficiently Allege that Project Discharges Are Violating the Permit.

SRWA's conclusory assertions that discharges from the project site are violating water quality standards are not sufficient for this Court to draw a reasonable inference that Defendants are violating the Permit. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. Again, water quality standards are not self-executing. *In re ACF Basin Water Litig.*, 467 F. Supp. 3d at 1337.

*"Unreasonable Interference" Is the Standard*

SRWA alleges that discharges from the project site are violating Ga. Comp. R. & Regs. 391-3-6-.03(5)(c), which provides, "[a]ll waters shall be free from material related to . . . discharges which produce turbidity . . . or other objectionable conditions that interfere with the designated use of the water body." Am. Compl. ¶¶

41, 63.  But only discharges that cause *unreasonable interference* with designated uses violate the regulation.  *See Altamaha Riverkeeper, Inc. v. Rayonier Performance Fibers, LLC,* 346 Ga. App. 269, 274 (2018).  SRWA does not allege unreasonable interference with Intrenchment Creek's designated use of fishing.[7]

Instead, SRWA contends (without any citation) that the EPA rejected the phrase "unreasonably interfere with the designated use of a water body" based on the Board of Natural Resources ("BNR") alleged "prior" version of the regulation.  Am. Compl. ¶ 44.  This is objectively incorrect.  The word "unreasonably" has never explicitly been included in any enforceable version of subsection (5)(c).  Instead, the Georgia Court of Appeals in *Rayonier* decided based upon the current version of the regulation, which does not explicitly have the word "unreasonably" in it, that the correct standard under Georgia law is an unreasonable interference.  *Rayonier Performance Fibers*, *LLC*, 346 Ga. App. at 276.  Although the court mentioned a proposed amendment to subsection (5)(c), which had "unreasonable" in it, that was not the existing state of the law. *Id.* at n.13.  In fact, the appellate court specifically acknowledged that EPA had not approved the revised rule[8] stating, "[i]t appears from

---

[7] SRWA does not even attempt to distinguish between the impacts to surface waters allegedly caused by permitted stormwater discharges and those caused by non-permitted discharges.  Without more, these allegations do not amount to a probative allegation of the potential for ongoing violations of the CWA.

[8] EPD proposed the rule change to make clear the agency's longstanding interpretation that unreasonable interference was the regulatory standard as the

the parties' supplemental briefing that the amendment to the regulation has been formally adopted by the Board and nothing remains to be done at the state level, but that the revised rule remains subject to EPA approval." *Id.* EPA never formally approved the proposed amendment on procedural grounds, so the material language interpreted by the Georgia appellate court in *Rayonier* is the same language that is now before this Court. *Id.* As such, the current standard requires "unreasonable" interference with designated uses, which Plaintiff has not pled.

The *Rayonier* panel was comprised of two currently sitting Georgia Supreme Court justices and a judge now sitting on this Court. After undertaking an exhaustive review of the cited regulation as well as other related legislation, the court concluded that "EPD's interpretation of the rule as encompassing a reasonableness standard in assessing a violation, as opposed to the ALJ's finding that the rule precludes 'any' interference, avoids unreasonably absolute and therefore potentially absurd applications of the rule." *Id.* at 274. Thus, the court rejected the very "absolute and therefore potentially absurd" interpretation that SRWA argues here—that any alleged interference, rather than unreasonable interference, is sufficient to give rise to a violation of Georgia's water quality standards. *Id.*; *see also* Am. Compl. ¶¶ 63,

---

*Rayonier* court held, but when the Georgia Supreme Court declined to grant review, the amendment to the rule to add the word "unreasonably" became moot because the lower court's interpretation prevailed.

105, 112, 117. SRWA's claims thus fail as a matter of law.

"Considerations of stare decisis are particularly forceful in the area of statutory construction, . . ." *IBP, Inc. v. Alvarez*, 541 U.S. 21, 32 (2005). Once a construction is established by a court, *stare decisis* also dictates that future agency constructions are measured against the prior court declaration of its meaning. *See Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536-37 (1992). Given the construction placed on subsection 5(c) by the Georgia Court of Appeals that the "narrative standard only prohibits 'unreasonable' interference," *Rayonier Performance Fibers, LLC,* 346 Ga. App. at 275-76, the proper governing standard requires an allegation that a violation unreasonably interferes with a water body's designated use. SRWA fails to make that allegation and cannot.

### Specific Provisions of the Permit Assure Water Quality Standards

SRWA misapprehends the legal treatment of turbidity by citing Ga. Comp. R. & Regs. 391-3-6-.03(5)(c) without substantive discussion of the more specific turbidity standard in Ga. Comp. R. & Regs. 391-3-6-.03(5)(d). *See* Am. Compl. ¶¶ 41, 46-47. First, SRWA fails to allege the facts set forth in the regulatory criteria of subsection (5)(d)—specifically, whether upstream and downstream locations were evaluated, whether a substantial visual contrast occurred, and how the BMP defense does or does not apply. In the absence of such allegations, SRWA fails to

meet the *Twombly* standard.[9]  Second, SRWA utterly ignores that subsection (5)(d) specifically addresses turbidity and land-disturbing activity and thus supplements any generic statement in subsection (5)(c) uncoupled from defined criteria.  *See Kirby v. Anthem, Inc., supra; see also Cnty. of Suffolk v. Alcorn,* 266 F.3d at 131, 139.  Subsection (5)(d) states that "For land disturbing activities, proper design, installation, and maintenance of best management practices and compliance with issued permits shall constitute compliance with Paragraph 391-3-6-.03(5)(d)."  Reading subsection (5)(c) as SRWA argues would make subsection (5)(d) mere surplusage.  Here, EPD has concluded that the Permit adequately protects water quality, and Defendants' compliance defeats SRWA's claims as a matter of law.

*Permit Shield*

SRWA includes numerous factually and legally irrelevant assertions. Specifically, ¶¶ 85–91 of the Amended Complaint concern prior agency actions that occurred years before Defendants obtained Permit coverage and have no bearing on current compliance.  Despite SRWA's effort to overwhelm the Court with

---

[9]  SRWA further fails to allege the absence of other causes or natural conditions of the water body unrelated to Defendants' development.  *See* Ga. Comp. R. & Regs. 391-3-6-.03(7) ("It is recognized that certain natural waters of the State may have a quality that will not be within the general or specific requirements contained herein. These circumstances do not constitute violations of water quality standards…NPDES permits and best management practices will be the primary mechanisms for ensuring that discharges will not create a harmful situation.").

superfluous material, Defendants have amply demonstrated the construction activities at the project site fully comply with the Permit and that the requisite BMPs have been properly designed, installed, and maintained. *See* Defendants' Opp. Br. to Plf's Motion for Prelim. Inj. [Dkt. 19] at 22. Indeed, SRWA has not pled otherwise. Accordingly, the CWA's "permit shield" affords an "absolute defense" to SRWA's claims. 33 U.S.C. § 1342(k); *Black Warrior Riverkeeper, Inc.,* 734 F.3d at 1301.

## B. SRWA Incorrectly Argues that Part I.C.4. of the Permit Elevates Water Quality Standards Above the CWA Permit Shield and the BMP Defense.

SRWA alleges that Defendants are violating Part I.C.4 by discharging stormwater that interferes with the designated use of Intrenchment Creek. Am. Compl. ¶ 117. The claim travels upon a misunderstanding of the structure and substance of the Permit, fails to state a claim upon which relief can be granted, and therefore must be dismissed. Part I.C.4. dovetails with Part I.C.3.d., which precludes coverage for discharges that EPD determines "to be or may reasonably be expected" to contribute to a violation of a water quality standard. Read together, Part I.C.3.d. and Part I.C.4. ensure that coverage under the Permit is only available for projects that will be protective of water quality standards through implementation of the Permit's more specific requirements (*e.g.*, BMP implementation). The Permit's BMP requirements and other conditions exist to delineate the specific requirements needed to ensure Permit compliance and protection of water quality.

Again, water quality standards are not self-executing and can only be enforced through incorporation into an enforceable permit. *See Am. Farm Bureau Fed'n*, 792 F.3d at 291; *Rio Hondo Land & Cattle Co.*, 995 F.3d at 1129; *Am. Paper Inst.*, 996 F.2d. at 350. SRWA argues that Part I.C.4. does just that, and further argues that the general language isolated to the eligibility provision supersedes the more specific BMP requirements that were expressly adopted as adequate to protect water quality. SRWA's argument would in essence eviscerate the CWA permit shield and the BMP Defense that flows from regulations and the Permit: rules, adopted by EPD under federal authority, *see* 40 C.F.R. § 122.28, that control in the absence of proof of violation of the BMPs.

By establishing applicable standards through regulatory action, namely the Permit, EPD struck a balance as a policy matter in its regulatory scheme on how to govern development around impaired waters. In other contexts where tension exists between more stringent requirements and an issued permit, some circuit courts have rejected the idea that a litigant may avoid the permit shield otherwise available under the CWA and *Gwaltney*. *See S. Appalachian Mt. Stewards v. Red River Coal Co.*, 992 F.3d 306, 311 (4th Cir. 2021) (recognizing supremacy of permit shield)*; Sierra Club v. ICG Hazard, LLC*, 781 F.3d 281, 291-92 (6th Cir. 2015) (same).

Although Judge Cooper previously suggested in an unpublished opinion, *Draper v. H. Roberts Family, LLC*, 2009 U.S. Dist. LEXIS 132853, *89 (N.D. Ga.

Civil Action No. 1:06-CV-3057-CC, Mar. 30, 2009), that a BMP defense might not apply to alleged violations of water quality standards, that opinion failed to undertake the analysis above and failed to examine the interplay between the CWA's permit shield, the BMP defense, and water quality standards. The unpublished opinion is wrong and yields to more in-depth analysis. To hold otherwise would empower a citizen-plaintiff to exercise more power and authority than the regulatory agency itself, which is not the law. "Congress did not intend to give citizens greater and faster enforcement authority … than the U.S. EPA." *Askins v. Ohio Dep't of Agric.*, 809 F.3d 868, 875-76 (6th Cir. 2016) (rejecting the plaintiffs "expansive reading of the citizen-suit provision [that would] grant citizens greater enforcement authority than the U.S. EPA"). And, SRWA knows that the proper avenue to contest agency regulatory authority is to pursue a challenge to the Permit before OSAH, because it did so.

### C. SRWA Failed to Satisfy the CWA Pre-Suit Notice Requirement.

SRWA has failed to provide adequate pre-suit notice and its action must be dismissed. The "notice requirement of 33 U.S.C. § 1365(b) is a mandatory condition precedent to the filing of a citizen suit under the Clean Water Act." *National Env't Found. v. ABC Rail Corp.*, 926 F.2d 1096, 1097 (11th Cir. 1991). Failure to comply with this notice requirement mandates dismissal of the action. *Id*. Courts cannot hear CWA citizen suits unless a sufficiently detailed notice has been provided to the

defendant.  *See* 33 U.S.C. § 1365; 40 C.F.R. § 135.3(a).  This notice serves the important function of providing the alleged violator an opportunity to investigate the allegations and take required corrective actions to avoid a lawsuit.  *See id*.; *see also Nat'l Parks & Conservation Ass'n, Inc. v. Tenn. Valley Auth.,* 502 F.3d 1316, 1329 (11th Cir. 2007) (To withstand dismissal the notice must be sufficient "to identify the allegedly violated standards, dates of violation, and relevant activities with the degree of specificity required by the regulations.")  The notice also provides the EPA or the state regulatory counterpart an opportunity to determine if they want to bring an enforcement action regarding the alleged improper activity.  *See Gwaltney of Smithfield, Ltd.*., 484 U.S. at 59.

Traditionally, challenges to pre-suit notices under the CWA have been jurisdictional attacks under Rule 12(b)(1).  *Sierra Club Ohio Chapter v. City of Columbus*, 282 F. Supp. 2d 756, 776 (S.D. Ohio 2003).  Recently, the United States Court of Appeals for the Eleventh Circuit held that the diligent prosecution defense, which is located in the same subsection of CWA § 505 as the pre-suit notice requirement, was a claims-processing rule instead of a jurisdictional hurdle.  *S. River Watershed All., Inc. v. Dekalb Cnty., Ga*., 69 F.4th 809, 822–23 (11th Cir. 2023).  The court did not specifically address the pre-suit notice requirement.  *Id*.  Another judge in this district has also suggested that Rule 12(b)(4) is the appropriate avenue to address the sufficiency of a pre-suit notice.  *Boring*, 426 F. Supp. 3d at 1345.

"Once the motion is made, the burden shifts to the Plaintiff to establish that their Notice met the requirements." *Id.* Here, regardless of whether the challenge travels under Rule 12(b)(6), Rule 12(b)(4), or Rule 12(b)(1), SRWA's insufficient notice mandates dismissal. Defendants move to dismiss under all three rules.

The Notice Letter fails because it alleged discharges to a specific perennial tributary that runs through the property and into Intrenchment Creek. However, in the Amended Complaint, SRWA expands those allegations to specifically target "Parcel 15 051 01 002," which was absent from the Notice Letter. *See Nat'l Parks & Conservation Ass'n, Inc.,* 502 F.3d 1316 at 1329; *see also Ctr. For Biological Diversity v. Marina Point Dev. Co.,* 566 F.3d 794, 802 (9th Cir. 2009) (Notices sent to developer under CWA were insufficient to satisfy 60-day notice requirement when the notice did not give any detail regarding what wetlands were allegedly being affected or how). As such, SRWA failed to afford the statutorily required notice of or opportunity to investigate SRWA's new allegation,[10] as it did not provide

---

[10]  In its Original Complaint, SRWA included additional allegations that discharges are occurring from other parts of the project site, traveling through a culvert, and discharging into a completely different tributary, which were never mentioned in the Notice Letter. Compl. ¶¶ 12–14. After Defendants filed their Motion to Dismiss the Original Complaint [Dkt. 22], Plaintiff filed an Amended Complaint [Dkt. 29], attempting to obscure this significant notice deficiency by deleting references to the specific conveyances of stormwater onto Parcel 15 051 01 002. *Compare* Complaint [Dkt. 1] at ¶¶ 12-14, *with* Amended Complaint [Dkt. 29] at ¶¶ 12-13 (deleting specific information about these stormwater conveyances that were not included in the Notice Letter). SRWA has accordingly abandoned any claims with respect to

sufficient detail about which area of Intrenchment Creek was allegedly being affected; therefore, SRWA's claim must be dismissed.

### D. SRWA's Action Is An Unlawful Collateral Attack On Prior Agency Actions.

This suit is in reality an impermissible collateral attack on EPD's 2018 decision to issue the Permit. The Clean Water Act does not contemplate challenges to prior agency actions, 33 U.S.C. § 1365. The Court should dismiss the claim or abstain from hearing it. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S. Ct. 1098, (1943).

#### 1. The Clean Water Act citizen suit provision does not authorize collateral attacks on prior agency actions.

Section 505 of the CWA authorizes citizens to stand in the shoes of a regulating agency (here, EPD or EPA) and bring legal action against alleged violators of an effluent limit or an NPDES permit condition. *See* 33 U.S.C. § 1365. Collateral attacks on prior agency actions cannot be sustained under the CWA citizen suit provision. *See Ga. Dep't of Cmty. Health v. Ga. Soc. Of Ambulatory Surgery Ctrs.,* 290 Ga. 628, 629, 724 S.E.2d 386, 389 (2012); *Miles v. Bibb Co.,* 177 Ga. App. 364, 365, 339 S.E.2d 316, 318 (1985). When SRWA argues that any discharges into the impaired Intrenchment Creek watershed would violate water quality standards [*see e.g.* Am. Compl. ¶¶ 28, 47, 86, 92-93], even those in

the portions of the project that do not discharge to the onsite tributary referenced in the Notice Letter.

compliance with the duly promulgated Permit, it in effect attacks the Permit **itself** as not protective of water quality standards. SRWA's Amended Complaint second guesses EPD's calculations from the 2007 and 2017 TMDLs and argues that EPD was wrong when it determined in 2007 and 2017 that compliance with the Permit is protective of water quality, including for impaired waters. Am. Compl. ¶¶ 86-92. Further, SRWA's claim that EPD was incorrect when it stated that "stormwater discharges are accounted for in TMDLs as nonpoint source load allocations" is contrary to the explicit language in the 2007 and 2017 TMDLs. *See id*. ¶¶ 84-86.

The remaining allegations in the Amended Complaint are based on (1) SRWA's own calculations of estimated soil loss for nonpoint sources, and (2) unidentified and unvalidated "data on the effectiveness of BMPs," BMPs which are mandated by EPD to comply with the Permit. *Id.* ¶¶ 86-91. Taken together, SRWA's arguments plainly operate as a collateral attack on the TMDLs and the Permit. CWA section 505 does not authorize citizen suits to challenge the validity of an EPA-approved TMDL or a prior-issued discharge permit. SRWA's improper collateral attacks on valid state permitting decisions made over five years ago are barred.

## 2. The Court should abstain from hearing SRWA's improper collateral attack on EPD's prior permitting decision.

*Burford* abstention is proper if a case: (1) presents difficult questions of state law bearing on problems of substantial public import whose importance transcends the results then at bar; or (2) if its adjudication in a federal forum would be disruptive

of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *See New Orleans Pub. Serv. Inc. v. Counsel of New Orleans*, 491 U.S. 350, 361 (1989). Indisputably, SRWA is litigating the scope of the 2023 General Permit before OSAH.

In the regulatory context, *Burford* abstention is proper when a plaintiff uses a federal lawsuit against a permittee to collaterally attack a state agency's permitting decisions. For example, in *Lac Minerals*, plaintiffs filed a citizen suit under the CWA and the Resource Conservation and Recovery Act ("RCRA") against the operators of a gold mine. *See Friends of Santa Fe Cnty. v. Lac Minerals*, 892 F. Supp. 1333 (D.N.M. 1995). However, the defendants had a permit from the state that "authoriz[ed] limited discharges and impos[ed] various operating conditions." *Id*. at 1344. The district court abstained under *Burford* because, through the permit, the State had "taken great care to provide for specialized adjudication of its complicated environmental law scheme." *Id*. at 1348. Moreover, the court noted that the plaintiffs "extensively participated in" the administrative proceedings for the permit and "could have appealed" the decision. *Id*. Instead, the plaintiffs circumvented the state administrative process and used the CWA's federal citizen's suit provision as "a collateral attack on the [permit] adjudication[.]" *Id*.[11]

---

[11] *See also Coalition for Health Concern v. LWD, Inc.*, 60 F.3d 1188 (6th Cir. 1995) (finding *Burford* abstention required dismissal of RCRA citizens suit filed after plaintiffs abandoned ongoing state administrative proceedings concerning the

Here, SRWA likewise attempts to use a federal CWA suit to bypass Georgia's administrative permitting process and collaterally attack EPD's decisions to issue the Permit in 2018.  The bulk of SRWA's Amended Complaint is very familiar to Defendants and to EPD.  SRWA attacks final EPD decisions from 2007 and 2017 to issue the TMDLs (which EPA approved), saying no wasteload allocation remains for any land-disturbing activity greater than an acre within the Intrenchment Creek watershed and really any statewide watershed impaired for sediment.  SRWA feigns to make this argument in the context of the Training Center alone, but, in fact, SRWA is arguing more broadly that all discharges from land-disturbing activity greater than an acre, even when in compliance with the Permit, are unlawful.  *See* Am. Compl. ¶¶ 52, 75-79.  That argument should have been raised through administrative and judicial appeals in 2018, when EPD issued the Permit.  But SRWA did not appeal then and instead seeks to collaterally attack the 2018 permit through a citizen suit five years too late. SRWA's argument is plainly a challenge to the Permit itself.  Indeed, this is SRWA's aim before OSAH for the 2023 Permit.

Georgia has established "administrative adjudications with elaborate procedural safeguards" for its permitting process. *Friends of Santa Fe Cnty.*, 892 F. Supp. at 1348.  And SRWA could have appealed, but instead is attempting to

permitting issue); *and see Sugarloaf Citizens Ass'n v. Montgomery Cnty*. 1994 U.S. App. LEXIS 21985 at *24 (4th Cir. 2017)

circumvent Georgia's administrative process by collaterally attacking EPD's prior adjudication and regulatory decisions. *See id.; see also Sierra Club v. Ga. Power Co.,* 365 F. Supp. 2d 1287, 1291 (N.D. Ga. 2004) *(citing Palumbo v. Waste Techs., Indus.,* 989 F.2d 156 (4th Cir. 1993) (holding that plaintiff cannot collaterally attack an agency decision when it failed to appeal the decision through administrative procedures)). "Challenges to a permit must be made in the administrative process resulting in the permit." *Id.* Significantly, when EPD reissued the Permit in 2023, SRWA did administratively appeal based on these identical arguments about the 2007 and 2017 TMDLs and the Permit conditions. *SRWA v. Dove*, Pet. For Hearing at ¶¶ 19–38. EPD, the permit writer, is a party to that case, and a hearing has been set for December 15, 2023. OSAH is the proper venue for SRWA to pursue this deeply flawed interpretation of the TMDLs and the Permit, and *Burford* abstention is appropriate here.

Tellingly, on March 20, 2023, SRWA administratively challenged EPD's decision not to require Defendants to obtain an individual permit for the Training Center and made these identical arguments. *See SRWA v. Richard Dunn*, Petition for Hearing, at ¶¶ 20, 33, 40. Instead of pursuing that administrative appeal, SRWA withdrew its challenge and two months later filed this citizen suit action.

It is true that courts in this district have occasionally refused to apply *Burford* abstention to environmental citizen suits, *see, e.g.*, *Johnson v. 3M*, 563 F. Supp.3d

1253, 1292 (N.D. Ga. 2021).  However, in each of these cases, the plaintiffs alleged that their respective defendants were either: (1) discharging pollutants in excess of permitted limits, or (2) discharging without a permit.  The instant case is fundamentally different.  Instead of challenging a discharge without a permit or an exceedance of discharges authorized by the Permit, SRWA attempts to use the citizen suit provision to reach back and challenge EPD's stormwater permitting program and its prior allocation of sediment loads to Intrenchment Creek.  Am. Compl. ¶¶ 86-92.  EPD's Permit and the sediment load allocations were developed after a years-long process that included public notice, were finalized in 2018, and approved by EPA in 2007 and 2017, respectively.  Any challenge to those agency actions presents complex questions of state law that should be addressed by EPD in administrative procedures in the first instance, not by this Court.  Accordingly, sufficient grounds exist to warrant the Court exercising its discretion to abstain from addressing SRWA's allegations if it does not otherwise dismiss this action.

## CONCLUSION

For the foregoing reasons, SRWA's claims should be dismissed in their entirety, or the Court should abstain from further review of any matter not dismissed.

Respectfully submitted,

**TROUTMAN PEPPER**
**HAMILTON SANDERS, LLP**

 */s/ William M. Droze*
William M. Droze, Ga. Bar No. 231039
E. Fitzgerald Veira, Ga. Bar No. 726726
Byron Kirkpatrick, Ga. Bar No. 396394
Kadeisha West, Ga. Bar No. 640699
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000
william.droze@troutman.com
fitzgerald.veira@troutman.com
byron.kirkpatrick@troutman.com
kadeisha.west@troutman.com

*Counsel for Defendant*
*the City of Atlanta*

**BLOOM PARHAM, LLP**

*/s/ Troy R. Covington*
(*signed with express permission*)
Simon H. Bloom, Ga. Bar No. 064298
Troy R. Covington, Ga. Bar No. 190949
Andrei Ionescu, Ga. Bar No. 105204
977 Ponce de Leon, Ave. NE
Atlanta, GA 30306
(404) 577-7710
sbloom@bloom-law.com
tcovington@bloom-law.com
aionescu@bloom-law.com

*Counsel for Defendant*
*Atlanta Police Foundation, Inc.*

## FONT CERTIFICATION

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that this

filing complies with the type and font requirements set forth in Local Rule 5.1.

*/s/ William M. Droze*
William M. Droze, Ga. Bar No. 231039
william.droze@troutman.com

*Counsel for Defendant*
*City of Atlanta*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the within and foregoing the City and Foundation's Joint Motion to Dismiss Plaintiff's Amended Complaint for Injunctive Relief was served via the Court CM-ECF electronic filing system upon Counsel of Record and also delivered by electronic mail to:

Simon H. Bloom, Ga. Bar No. 064298
Troy R. Covington, Ga. Bar No. 190949
Andrei Ionescu, Ga. Bar No. 105204
977 Ponce de Leon, Ave. NE
Atlanta, GA 30306
(404) 577-7710

Jon Schwartz, Ga. Bar No. 631038
1100 Peachtree Street, N.E. Suite 250
Atlanta, GA 30309
(404) 667-3047

This the 25th day of October, 2023.

*/s/ William M. Droze*
William M. Droze, Ga. Bar No. 231039
william.droze@troutman.com

*Counsel for Defendant*
*City of Atlanta*