IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SOUTH RIVER WATERSHED ALLIANCE, INC. <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF ATLANTA, and ATLANTA POLICE FOUNDATION, INC. <br><br> Defendants. | Civil Action File No. <br> 1:23-CV-03416-JPB |

**CITY OF ATLANTA AND ATLANTA POLICE FOUNDATION'S JOINT REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

Defendants City of Atlanta ("the City") and the Atlanta Police Foundation, Inc. ("the Foundation" and collectively, "Defendants") file their Reply Brief in support of their Joint Motion to Dismiss [Dkt. 34] ("Defs. Motion") showing as follows:

ARGUMENT AND CITATION OF AUTHORITY

**A. SRWA Has Not Established an Ongoing Violation that Would Give Rise to an Enforceable Clean Water Act Claim.**

It is undisputed that to establish a Clean Water Act ("CWA") violation, a citizen-plaintiff must prove that (1) there has been a discharge; (2) of a pollutant; (3) into waters of the United States; (4) from a point source; (5) without or in violation of an NPDES permit. *See Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993,

1008 (11th Cir. 2004). In its response brief, South River Watershed Alliance, Inc. ("SRWA") does not dispute that water quality standards and TMDLs are not self-executing and have no regulatory force on their own. *See Rio Hondo Land & Cattle Co., L.P. v. U.S. EPA*, 995 F.3d 1124, 1129 (10th Cir 2021); *see also In re ACF Basin Water Litig.*, 467 F. Supp. 3d 1323, 1337 (N.D. Ga. 2020) ("Georgia's water quality standards are not self-enforcing, rather they provide the basis for specific, enforceable requirements designed to achieve them."). SRWA has effectively conceded this point. *Atleisure, Inc. v. Ace Evert Inc.*, No. 1:12-CV-1260-CAP, 2013 WL 12099363, at *6 (N.D. Ga. June 6, 2013) (*citing* LR 7.1(B) for the proposition that courts consider points conceded when a party fails to respond with argument or evidence). Accordingly, SRWA's claims, which are based solely on an alleged violation of a water quality standard, must fail. SRWA's alleged CWA violation is unsupported. The Court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

**B. Unreasonable Interference Is the Governing Standard to Determine if a Violation of Water Quality Standards Occurred.**

SRWA engages in a shell game in an attempt to distinguish *Altamaha Riverkeeper, Inc. v. Rayonier Performance Fibers, LLC*, 346 Ga. App. 269, 274 (2018) ("*Rayonier*").[1] The public policy of this state is clear: "The people of …

---

[1] SRWA incorrectly argues that Division 1 of *Rayonier* is merely physical precedent. The special concurrence as to that division includes a statement of agreement by the concurring judge. *See* Georgia Court of Appeals Rule 33.2(a)(3).

Georgia are dependent upon the rivers, streams, lakes, and subsurface waters of the state for public and private water supply and for agricultural, industrial, and recreational uses. It is therefore declared to be the policy of the State … that the water resources … shall be utilized prudently for the maximum benefit of the people . . ." O.C.G.A. § 12-5-21(a). "Maximum benefit of the people" does not mean a myopic view of water quality that halts all development activity and distorts reasonable development of state resources. SRWA erroneously asserts that because a prior version of Ga. Comp. R. & Regs. 391-3-6.03(5)(c) referred to "legitimate water uses," rather than "designated uses," the *Rayonier* decision can be ignored. (Plf. Resp., [Dkt. 35] at 2).[2] While the word "legitimate" was replaced with "designated" in the most recent version of the regulation, that change has nothing to do with the burden to show that an alleged interference must be an *unreasonable* interference to constitute a violation of Georgia's water quality standards.

Of paramount importance, the Court's analysis in *Rayonier* applied the word *unreasonably* as a modifier for the word *interfere* in Ga. Comp. R. & Regs. 391-3-6-.03(5)(c). *See Rayonier*, 346 Ga. App. at 274. The word *interfere* does not modify

---

[2] SRWA also asserts that the Court should disregard the *Rayonier* standard because plaintiffs in that case asserted aesthetic violations and not turbidity violations. SRWA provides no support for this assertion, but it fails anyway because the water quality standard at issue in this case specifically addresses both aesthetic concerns (color, odor) and turbidity. Ga. Comp. R. & Regs. 391-3-6.03(5)(c).

the words designated or legitimate. Therefore, the Court's analysis and interpretation remain applicable to the current regulatory text which prohibits discharges from *unreasonably* interfering with designated uses. As argued in Defendants' Motion, *stare decisis* now applies to control the interpretation.

Further, the court of appeals detailed the regulatory history about EPD amending the narrative standard during the pendency of that appeal, changing the word "legitimate" to "designated," to clarify its interpretation of the regulation as argued in *Rayonier*: that the water body's designated use must be considered when determining whether an interference violates the water quality standard in an *unreasonable* manner. The court of appeals relied upon the Administrative Law Judge's (ALJ) summary of EPD's interpretation in its opinion:

> [T]hese [narrative water quality] standards must be considered in the context of the particular water's "designated use." [T]he narrative water quality standards do not require that all people get to use all sections of every waterbody at all times. Rather, for multi-use bodies of water, like the Altamaha, there must be a reasonable accommodation of all legitimate uses, including industrial discharges. This section of the Altamaha's designated use is fishing, the lowest designation in terms of water quality, and the narrative standards should not be interpreted to convert the designated use to some higher use.

*Id*.

The *Rayonier* court agreed that "EPD's interpretation of the rule is not inconsistent with the [Georgia Water Quality Control Act] and the regulatory scheme." *Id*. The court further found that although the plain narrative standard does

not specify the degree of interference with water uses that would constitute a violation of the rule, "EPD's interpretation of the rule as encompassing a reasonableness standard in assessing a violation, as opposed to the ALJ's finding that the rule precludes 'any' interference, avoids unreasonably absolute and therefore potentially absurd applications of the rule." *Id*. Thus, SRWA's contention here that *any* interference with designated uses violates water quality standards is unreasonably absolute and an absurd application of the rule.

SRWA affirmatively pleads that the designated use for Intrenchment Creek is "fishing." Am. Compl. [Dkt. 29], ¶ 62. Accordingly, SRWA must allege conduct that unreasonably interferes with fishing – "the lowest designation in terms of water quality," *Rayonier*, 346 Ga. App. at 274. SRWA utterly fails to demonstrate that development activity at the Training Center – conducted under the Permit and using best management practices – *unreasonably* interferes with fishing. Having failed to state a claim based on the applicable legal standard, SRWA's Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### C. EPD Has Reasonably and Consistently Interpreted Ga. Comp. R. & Regs. 391-3-6.03(5)(c) to Prohibit *Unreasonable* Interference.

SRWA argues that EPD's *unreasonable* interference interpretation is not entitled to deference, because "EPD's position related to [SRWA's] claim … has been inconsistent." (Plf. Resp. at 5). SRWA appears to support this contention by suggesting that statements made in the 2007 TMDL regarding BMPs are somehow

5

inconsistent with more recent, uncited statements by EPD seemingly about the Permit or the TMDL. (*Id.* at 5-6). SRWA's argument is deeply flawed.

Putting aside the controlling nature of *Rayonier*, the question is whether EPD has held a consistent position with respect to its interpretation that this water quality standard prohibits an *unreasonable* interference with the designated use. The answer is that it has held a consistent interpretation and the court of appeals has upheld that interpretation. Whether EPD has hypothetically taken an inconsistent position with respect to SRWA's "claims," *id* at 5, or whether EPD has inconsistently articulated its long-held position that BMPs are protective of water quality are simply irrelevant questions. *Rayonier* controls this debate and SRWA cannot "point to anything in the record indicating that EPD has taken an inconsistent position" related to its insistence upon unreasonable interference. *See Rayonier,* 346 Ga. App. at 273.

SRWA fails to allege unreasonable interference with Intrenchment Creek's designated use. SRWA's Complaint fails to state a claim for violation of the CWA. Consequently, the Court does not have subject-matter jurisdiction to decide this case. As such, its Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**D. SRWA's Arguments Regarding the Permit's Generic Reference to Water Quality Standards Are Unavailing.**

SRWA claims that Defendants' interpretation of the Permit would give no effect to Part I.C.4. (Plf. Resp. at 20). SRWA is wrong because Defendant's

6

...

interpretation is the only one that harmonizes and gives effect to both Part I.C.4. and the more specific and applicable requirements of the Permit. Part I.C.4. of the Permit prohibits discharges that violate water quality standards, and Part III.C.2 sets out BMPs that ensure a permittee's discharges do not cause or contribute to a violation of water quality standards. Part I.C.4. expressly references Ga. Comp. R. & Regs. 391-3-6-.03. Thus, Part I.C.4. is just one isolated part of a comprehensive regulatory framework, both federal and state, to limit the discharge of pollutants into the waters of the United States and Georgia. *See generally City of Guyton v. Barrow*, 305 Ga. 799, 805 (2019) (recognizing comprehensive nature of regulatory framework with regard to the antidegradation rule).

EPD established by regulation that implementation of the enumerated BMPs in Part III.C.2 will protect the water quality standards referenced in Part I.C.4., and SRWA's isolated focus on Part I.C.4. does not dispense with the comprehensive regulatory language framework that exists within the Permit or the broader regulatory scheme. Tellingly, in its Amended Complaint, SRWA does not allege (nor could it with any credibility) that the Defendants have failed to design and implement BMPs or comply with any of the substantive Permit requirements. SRWA fails to meet its burden to state a claim that there is a violation of the Permit, and as such, its claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### E. SRWA Failed to Satisfy the Required Pre-Suit Notice Requirements Under the CWA Necessary to Confer Jurisdiction.

SRWA has failed to provide adequate pre-suit notice, and its action must be dismissed. The "notice requirement of 33 U.S.C. § 1365(b) is a mandatory condition precedent to the filing of a citizen suit under the Clean Water Act." *National Env't Found. v. ABC Rail Corp.*, 926 F.2d 1096, 1097 (11th Cir. 1991). Failure to comply with this notice requirement mandates dismissal of the action. *Id*. Defendants established that SRWA's notice of intent to sue letter ("Notice Letter") was insufficient because it only alleged discharges to a specific perennial tributary that runs through the Training Center's property and into Intrenchment Creek. (Defs. Motion at 24). However, in the Amended Complaint, SRWA expands those allegations to specifically target "Parcel 15 051 01 002," which is a geographically distinct location not addressed in the Notice Letter. *Id*. Accordingly, SRWA failed to afford Defendants the opportunity to properly investigate SRWA's allegations, because it did not perfect a claim about which area of Intrenchment Creek was allegedly being affected; therefore, SRWA's claim must be dismissed. *See Nat'l Parks & Conservation Ass'n, Inc. v. Tennessee Valley Auth.,* 502 F.3d 1316, 1329 (11th Cir. 2007); *see also Ctr. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 802 (9th Cir. 2009) (notices sent to developer under CWA were insufficient to satisfy 60-day notice requirement when they did not give any detail regarding what specific wetlands were allegedly being affected or how).

In its response brief, SRWA concedes that it did not include the target Parcel 15 051 01 002 (the "Parcel") in its Notice Letter. (*See* Plf. Resp., *generally*). Despite this, SRWA improperly concludes that the Notice Letter alleged sufficient information to permit the Defendants to identify the CWA allegations later alleged in the Amended Complaint. *Id.* at 16. In support of this conclusion, SRWA confusingly cites to numerous allegations that it made ***for the first time*** in the Amended Complaint (rather than information it included in the Notice Letter) and argues that its contention regarding the Parcel is not a "new allegation." *See id*. at 14. Further, SRWA contends that the proper remedy for a deficient notice would be to strike the new allegations and not dismiss the case. *Id.* The Amended Complaint is already SRWA's second bite at the apple after putting Defendants to the effort of a motion to dismiss. Asking the Court to now save them from their own improper allegations is beyond the pale. Moreover, SRWA cites no legal support for the proposition that the Court may simply strike improper allegations when a party has failed to comply with jurisdictional pre-suit notice requirements under the CWA.

As further detailed in Defendants' Motion, because the law is not well-settled regarding the appropriate Rule 12(b) motion for addressing a failure to comply with the pre-suit notice requirements under the CWA, Defendants have moved to dismiss pursuant to Rule 12(b)(6), Rule 12(b)(4), and Rule 12(b)(1) in an abundance of caution. *See Sierra Club Ohio Chapter v. City of Columbu* 282 F. Supp. 2d 756, 776

9

(S.D. Ohio 2003); *S. River Watershed All., Inc. v. Dekalb Cnty., Ga.*, 69 F.4th 809, 822–23 (11th Cir. 2023); *see also Boring v. Pattillo Indus. Real Estate*, 426 F. Supp. 3d 1341, 1345 (N.D. Ga. 2019) (cit. om.).

### F. Defendants Factually Attack the Court's Subject Matter Jurisdiction to Hear SRWA's Citizen Suit.

Without legal support, SRWA argues that the Defendants' Motion "seems to be a facial attack under Federal Rule of Civil Procedure 12(b)(6) – not a factual attack under Rule12(b)(1) or 12(b)(6)," (Plf. Resp. at 9), despite Defendants' contention that the Court does not have subject-matter jurisdiction on a factual, not facial basis.  However, regardless of SRWA's self-serving characterization, the law is clear that a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Coward v. Forestar Realty, Inc.*, No. 4:15-CV-0245-HLM, 2016 WL 11187028, at *1 (N.D. Ga. Apr. 7, 2016).  Under a factual attack, the plaintiff bears the burden of proof that subject-matter jurisdiction exists. *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F. Supp. 1040, 1047 (S.D. Ga.), on reconsideration, 755 F. Supp. 1055 (S.D. Ga. 1990).

Defendants' challenge the existence of subject matter jurisdiction in fact, because SRWA's pleadings together with facts of record support Defendants' contention that an ongoing violation cannot be established solely based on an alleged

violation of water quality standards; standards that are not self-executing. (Defs. Motion at 12). Further, absent a violation, much less an ongoing violation, the Court lacks subject matter jurisdiction, and the case should be dismissed. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987) (holding that the CWA did not confer federal jurisdiction over citizen suits for wholly past violations). Because Defendants do not rely exclusively upon SRWA's pleadings to show the Court lacks subject-matter jurisdiction, this is not merely a facial attack.

SRWA cites *Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir. 1990) for the proposition that when a factual attack on subject-matter jurisdiction also implicates the merits of a claim, then "the court must review the motion under Rule 12(b)(6) or Rule 56." However, SRWA erroneously characterizes the Eleventh Circuit's ruling in that case. Instead, the *Lawrence* court held that "[w]hen the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction." *Lawrence*, 919 F.2d at 1530. The Court can decide here that SRWA's claims fail to invoke subject matter jurisdiction as the merits are not intertwined with the jurisdictional question.

### G. The Court Properly Affords Judicial Notice to Evidence Offered by Defendants.

EPD's Motion to Dismiss or In the Alternative Motion for Summary Determination filed in the state administrative proceeding establishes that SRWA's

11

arguments regarding the sufficiency of the Permit and alleged inconsistencies with the TMDLs are being resolved in that proceeding. (Defs. Motion at n.2). SRWA does not dispute that judicial notice is possible. Instead, SRWA argues that courts cannot take judicial notice of facts within documents that are disputed by the parties. (Plf. Resp. at 10). However, Defendants do not ask the Court to take judicial notice of disputed facts within the briefing for the truth of the matters asserted. Instead, Defendants simply seek to establish that the same arguments that SRWA improperly advances in this lawsuit are being addressed in the administrative proceeding. Because SRWA does not dispute the authenticity of EPD's motion, this Court can take judicial notice of EPD's brief. *See Ellison v. Postmaster Gen., United States Postal Serv.*, No. 20-13112, 2022 WL 4726121, at *9 (11th Cir. Oct. 3, 2022)(affirming the district court's decision to take judicial notice of relevant documents from an agency proceeding).

Regarding Defendants' response to the pre-suit notice letter tendered as Exhibit 1 to the Amended Complaint, "[a] district court, at the motion to dismiss stage, may take judicial notice of relevant public documents." *Id.* Defendants' response to the notice letter plainly constitutes such a document.

### H. SRWA's Action Is an Unlawful Collateral Attack on Prior Agency Actions.

SRWA's protestations to the contrary notwithstanding, its arguments that any discharges into Intrenchment Creek watershed would violate water quality standards

(even those in compliance with the duly promulgated Permit), are an attack on the Permit itself.  *See e.g.,* Am. Compl. ¶¶ 28, 47, 86, 92-93.  SRWA unconvincingly argues that the allegations in the Amended Complaint are not intended to second guess EPD's calculations from the 2007 and 2017 TMDLs when in reality SRWA uses their alleged inadequacy to suggest that any discharges violate water quality standards.  Arguing that EPD was wrong when it determined in 2007 and 2017 that compliance with the Permit is protective of water quality, including for impaired waters, is plainly a collateral attack on the TMDLs.  Am. Compl. ¶¶ 86-92.

SRWA ignores its own allegations are based upon (1) SRWA's calculations of estimated soil loss for nonpoint sources, and (2) unidentified and unvalidated "data on the effectiveness of BMPs," – BMPs which are mandated by EPD to comply with the Permit and, of course, water quality standards.  *Id.* ¶¶ 86-91; *see also* (Plf. Resp., *generally*).  SRWA's arguments collectively operate as a collateral attack on the TMDLs and the Permit.  CWA section 505 does not authorize citizen suits to challenge the validity of an EPA-approved TMDL or a prior-issued discharge permit. 33 U.S.C. § 1365.  SRWA had the opportunity to challenge them at the time (and is doing so now with regard to newly issued permits), but it cannot collaterally attack past regulatory decisions for which the time for challenge has long expired.  SRWA's improper collateral attacks are barred.

### I. The Court Should Abstain from Hearing SRWA's Improper Collateral Attack on EPD's Prior Permitting Decision.

*Burford* abstention is proper if a case: (1) presents difficult questions of state law bearing on problems of substantial public import whose importance transcends the results then at bar; or (2) if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *See New Orleans Pub. Serv. Inc. v. Counsel of New Orleans*, 491 U.S. 350, 361 (1989); *see also* (Defs. Motion at 26-27). It is undisputed that SRWA is litigating the validity of the 2023 General Permit before OSAH, making the same allegations it asserts in this case. In the regulatory context, *Burford* abstention is proper when a plaintiff uses a federal lawsuit against a permittee to collaterally attack a state agency's permitting decisions. *See Friends of Santa Fe Cnty. v. Lac Minerals*, 892 F. Supp. 1333 (D.N.M. 1995).

SRWA argues that the Court should not abstain from exercising jurisdiction and cites *Flint Riverkeeper, Inc. v. S. Mills, Inc.*, 276 F. Supp. 3d 1359, 1369 (M.D. Ga. 2017), for the proposition that *Burford* abstention does not apply to citizen suits brought under the CWA. (Plf. Resp. at 25). However, that case is not binding precedent and in any event is distinguishable from the instant case. In *Flint Riverkeeper, Inc.*, Plaintiffs alleged that the defendant was discharging pollutants that exceeded the scope of its NPDES permit. *Id*. at 1368.

The instant case is fundamentally different. Instead of challenging a discharge

14

without a permit or an exceedance of discharges authorized by the Permit, SRWA attempts to use the citizen suit provision to reach back and challenge EPD's stormwater permitting program and its prior allocation of sediment loads to Intrenchment Creek. Am. Compl. ¶¶ 86-92. EPD's Permit was finalized in 2018, and EPD's sediment load allocations were finalized and ultimately approved by EPA in 2007 and 2017, respectively. These final actions followed years-long processes that included public notice and comment. Any challenge to those agency actions presents complex questions of state law that should be addressed by EPD in an administrative proceeding in the first instance, not by this Court. The Court should exercise its discretion to abstain from addressing SRWA's allegations if it does not otherwise dismiss this action. *See New Orleans Pub. Serv. Inc.*, 491 U.S. at 361.

## CONCLUSION

For the foregoing reasons, SRWA's claims should be dismissed in their entirety either based upon the Court's lack of subject matter jurisdiction or because SRWA's Complaint fails to state a claim for relief. Alternatively, should the Court not dismiss the complaint in its entirety, the Court should abstain from further review of any matter not dismissed given pending state administrative proceedings that travel upon the same arguments that SRWA seeks to assert here and involve fundamental questions specific to Georgia state public policy relative to water quality standards.

Respectfully submitted,

| **TROUTMAN PEPPER HAMILTON SANDERS, LLP** | **BLOOM PARHAM, LLP** |
|---|---|
| */s/ William M. Droze* | */s/ Troy R. Covington* |
| William M. Droze, Ga. Bar No. 231039 | (*signed with express permission*) |
| E. Fitzgerald Veira, Ga. Bar No. 726726 | Simon H. Bloom, Ga. Bar No. 064298 |
| Byron Kirkpatrick, Ga. Bar No. 396394 | Troy R. Covington, Ga. Bar No. 190949 |
| Kadeisha West, Ga. Bar No. 640699 | Andrei Ionescu, Ga. Bar No. 105204 |
| 600 Peachtree Street NE, Suite 3000 | 977 Ponce de Leon, Ave. NE |
| Atlanta, GA 30308 | Atlanta, GA 30306 |
| (404) 885-3000 | (404) 577-7710 |
| william.droze@troutman.com | sbloom@bloom-law.com |
| fitzgerald.veira@troutman.com | tcovington@bloom-law.com |
| byron.kirkpatrick@troutman.com | aionescu@bloom-law.com |
| kadeisha.west@troutman.com | |
| *Counsel for Defendant the City of Atlanta* | *Counsel for Defendant Atlanta Police Foundation, Inc.* |

## **FONT CERTIFICATION**

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that this filing complies with the type and font requirements set forth in Local Rule 5.1.

*/s/ William M. Droze*
William M. Droze, Ga. Bar No. 231039
william.droze@troutman.com

*Counsel for Defendant*
*City of Atlanta*

## **CERTIFICATE OF SERVICE**

I hereby certify that the within and foregoing the City and Foundation's Joint Reply in Support of Their Motion to Dismiss Plaintiff's Amended Complaint for Injunctive Relief was served via the Court CM-ECF electronic filing system upon Counsel of Record and also delivered by electronic mail to:

Simon H. Bloom, Ga. Bar No. 064298
Troy R. Covington, Ga. Bar No. 190949
Andrei Ionescu, Ga. Bar No. 105204
977 Ponce de Leon, Ave. NE
Atlanta, GA 30306
(404) 577-7710

Jon Schwartz, Ga. Bar No. 631038
1100 Peachtree Street, N.E. Suite 250
Atlanta, GA 30309
(404) 667-3047

This the 13th day of November, 2023.

                                            */s/ William M. Droze*
                                            William M. Droze, Ga. Bar No. 231039
                                            william.droze@troutman.com

                                            *Counsel for Defendant*
                                            *City of Atlanta*